United States District Court
District of Massachusetts

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    v.<br><br>PHILIP R. BENINATI, NINFA M.<br>BENINATI, PLYMOUTH SAVINGS BANK<br>and COUNTRYWIDE HOME LOANS, INC.<br>    Defendants. | Civil Action No.<br>06-11296-NMG |

MEMORANDUM & ORDER

GORTON, J.

In this action to recover federal tax liens, the plaintiff, the United States of America ("the government"), has moved for summary judgment.

I. **Background**

In a complaint filed on July 27, 2006, the government alleges that defendants Philip and Ninfa Beninati ("the Beninatis") failed to pay their joint federal income taxes for the 1985, 1986 and 1988 tax years. The complaint seeks damages for the remaining balance of the Beninatis' tax liability (Count I) and foreclosure of their tax liens (Count II). The Beninatis' liabilities were assessed by the Internal Revenue Service ("IRS") based on a stipulated decision in a 1993 United States Tax Court proceeding between the Beninatis and the Commissioner of Internal Revenue and were subsequently adopted by this Court.

In 2006, the Beninatis filed for voluntary bankruptcy protection and were granted a discharge on August 27, 2007. As part of that proceeding, the bankruptcy court approved a distribution of $131,034 to the Internal Revenue Service ("IRS") in partial satisfaction of the Beninatis' tax liability. The slight variation between the amount stated here and that set forth in the government's prior pleadings is deemed de minimis and immaterial. Then, on October 28, 2008, the government moved for summary judgment and entry of separate judgment with respect to Count II.[1] In a Memorandum and Order dated July 7, 2009, this Court allowed summary judgment on the government's foreclosure count with respect to real property located at 20 Greenleaf Street, Billerica, Massachusetts ("the Greenleaf Property"). The Greenleaf Property was also subject to mortgages from Plymouth Savings Bank and Countrywide Home Loans, Inc., both of which are named defendants in this case.

On January 27, 2010, the IRS Property Appraisal and Liquidation Specialist ("PALS") sold the Greenleaf Property at a public auction. On April 26, 2010, the Court entered an order confirming the sale and directing the Clerk of Court to distribute the sale proceeds, of which the IRS received $164,567 after distribution to the first mortgagee. The Court amended

---

[1] The government did not move for summary judgment with respect to Count I at that time because outstanding discovery on the bankruptcy discharge was necessary to its disposition.

that order the following day to account for $3.47 in accrued interest, increasing the distribution to the IRS to $164,571. Given that the IRS has received the proceeds from the foreclosure sale, the remaining amount of the Beninatis' tax liabilities from 1985, 1986 and 1988 is, as of April 2, 2010, $553,505, plus statutory accruals.

The government now seeks entry of summary judgment on its remaining claim in this action (Count I) and an order that the Beninatis' tax liabilities were not discharged in bankruptcy and that they are liable to the United States for $553,505, plus statutory interest and accruals from April 2, 2010, the date the motion was filed.[2]

Philip Beninati has opposed the government's motion pro se with a two-page memorandum which does not materially controvert the facts stated by the government and makes no legal arguments. He has also submitted a "motion to reject [the government's] illegal sale of property" which remains pending notwithstanding the Court's order confirming the sale of the Greenleaf Property.

## II. Analysis

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and

---

[2] The government's motion indicates that the defendants' liability is $553,508 but the Court has modified that amount by $3.47 to reflect the amendment to the order confirming the sale of the Greenleaf Property.

to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists

and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Application

Although "a debtor is generally granted discharge from debts that arose prior to the filing of the bankruptcy petition," Stamper v. United States, 360 F.3d 551, 557 (6th Cir. 2004), there is a limited exception to that rule for debtors who willfully attempt to evade or defeat their tax obligations. See 11 U.S.C. § 523(a)(1)(C). To meet that statutory exception, the government must prove, by a preponderance of the evidence, that a particular claim is not dischargeable. United States v. Fretz, 244 F.3d 1323, 1327 (11th Cir. 2003). Exceptions to the general rule of discharge are to be construed strictly in favor of the debtor. Id.

The relevant statute contains a conduct and a mental state requirement. See 11 U.S.C. § 523(a)(1)(C); Steinkrauss v. United States, 313 B.R. 87, 96 (Bankr. D. Mass. 2004). To satisfy the conduct requirement, the government must prove "that the debtor engaged in affirmative acts to avoid payment or collection of the taxes." United States v. Jacobs, 490 F.3d 913, 920 (11th Cir. 2007). The mental state requirement is met if the government demonstrates that the debtor 1) had a duty to pay taxes, 2) knew he had such a duty and 3) voluntarily and intentionally violated that duty. Id. (citing Fretz, 244 F.3d at 1330).

Conduct that constitutes circumstantial evidence of a debtor's willful intent to evade taxes includes: 1) implausible or inconsistent explanations of behavior, 2) inadequate financial records, 3) transfers of assets that greatly reduce assets subject to IRS execution and 4) transfers made in the face of serious financial difficulties. United States v. Spiwak, 285 B.R. 744, 751 (S.D. Fla. 2002). Significant dealings in cash and maintaining an extravagant lifestyle can also serve as evidence of willful intent. See Hamm v. United States, 356 B.R. 263, 286 (Bankr. S.D. Fla. 2006) (where debtors spent extravagantly and frequently withdrew large sums of money from their bank accounts in the face of significant tax liabilities); Fegely v. United States, 118 F.3d 979, 984 (3d Cir. 1997) (where debtors made lavish expenditures while simultaneously failing to file tax returns or pay tax liabilities).

The government has met its burden of proof with respect to both the conduct and mental state requirements of 11 U.S.C. § 523(a)(1)(C). The judgment of the tax court, and the defendants' signatures on the stipulated decision, establish that the defendants had a duty, and knew of that duty, to pay taxes. It is equally clear that the Beninatis voluntarily and intentionally violated that duty. The defendants took a number of actions that demonstrate their willful attempt to evade their tax obligations, including 1) using the Beninati Living Trust

("the Trust") to buy and sell real estate while concealing that property from the IRS, 2) living a lavish lifestyle replete with expensive vacations, 3) making frivolous offers to compromise with the IRS, 4) dealing in cash and 5) filing late tax returns.

First, the Beninatis used the Trust, of which they are grantors and entitled to annual distributions of its net income, to buy and sell property in Florida. They also transferred their commercial property in Billerica, Massachusetts to the Trust for $1 in 2004 by quitclaim deed which suggests that they were trying to conceal their assets from the IRS. In the defendants' memorandum in opposition to the motion for summary judgment, Philip Beninati denies having transferred any personal property to the Trust but provides no evidence to support that contention. The government, on the other hand, has appended a copy of the quitclaim deed transferring the Billerica property to the Trust in August, 2004.

Moreover, despite their tax liabilities, the Beninatis maintained a lavish lifestyle. They spent extravagantly on luxury items such as expensive vacations, real estate purchases and a boat. In 2005, one year before filing for bankruptcy, the Beninatis took out a second mortgage of $100,000 on the Greenleaf Property. When questioned about the mortgage, Philip Beninati replied that he could not remember what he did with the money but that he "spent it on something else."

Between 2001 and 2004, the Beninatis submitted frivolous offers of compromise to the IRS, offering to pay $0, $0.01, $1 and $100 to settle their tax obligations. See United States v. Swenson, 381 B.R. 272, 300 (Bankr. E.D. Cal. 2008) (debtor's offer of compromise of $600 on a $700,000 tax liability while withdrawing nearly five times as much for gambling was proof of voluntary and intentional violation of his duty to pay taxes). The Beninatis also wrote a number of large checks to themselves, in amounts varying from $2,000 to $10,000, indicating that they preferred to make purchases in cash. The checks were often used to move money from one bank account to another but at other times their purpose was unclear.

In addition, between 1985 and 2005, the Beninatis filed their annual federal income tax returns late on ten separate occasions. See Hassan v. United States, 301 B.R. 614, 623 (S.D. Fla. 2003) (mental state prong was met where defendants gave no reason for failing to file timely returns or pay their tax obligations). Finally, although the government urges the Court to make adverse inferences from Philip Beninati's frequent assertion of his Fifth Amendment privilege, such inferences are unnecessary because the government has met its burden with respect to the defendants' mental state through the other factors discussed above.

The actions taken by the defendants to conceal their assets

also satisfy the conduct requirement of 11 U.S.C. § 523(a)(1)(C). The Beninatis not only failed to pay their taxes for the years 1985, 1986 and 1988 but took affirmative steps to avoid payment of those taxes.

In sum, because the government has adequately demonstrated that the defendants willfully attempted to evade their unpaid federal income tax liabilities (and the defendants have proffered no evidence to contradict such a finding), the government is entitled to summary judgment with respect to Count I and to a judgment in the amount of $553,505, plus statutory accruals.

### ORDER

In accordance with the foregoing, plaintiff's motion for summary judgment (Docket No. 54) is **ALLOWED** and defendants' motion to reject sale of the Greenleaf Property (Docket No. 56) is **DENIED** as moot.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 9, 2010